**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**JONATHAN RAY,**<br><br>**Defendant.** | **Case No. 25-MJ-117** |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRE-TRIAL DETENTION**

The United States respectfully submits this memorandum in support of its oral motion for detention pending trial under 18 U.S.C. § 3142(f)(1)(E) (felony involving possession of a firearm), as the Defendant, Jonathan Ray, is charged with violating 18 U.S.C. § 922(g)(1) (Unlawful Possession of a Firearm). Mr. Ray's troubling criminal history as well as his prior noncompliance with supervised release, puts the community at risk. As described below, all four statutory factors in § 3142(g) strongly favor pretrial detention.

Accordingly, the government agrees with Pretrial Services' recommendation that no condition or combination of conditions can reasonably assure the Mr. Ray's appearance in court or the safety of the community. The government requests that the Court consider the following points and authorities, as well as any other information present at the detention hearing, and order Mr. Ray detained pending trial.

## I. Factual and Procedural History

On July 8, 2025, the Honorable Magistrate Judge G. Michael Harvey signed a criminal complaint authorizing the arrest of Mr. Ray for violation of 18 U.S.C. § 922(g)(1). On June 9,

2025, an initial appearance was held before the Honorable Magistrate Judge G. Michael Harvey. After the United States made a motion for pretrial detention, the Court set the detention hearing for July 11, 2025.

On June 26, 2025, at approximately 2:10 am, Metropolitan Police Department ("MPD") Officer Miciyah Carter was issuing parking tickets on the 700 Block of 11th Street, SW, Washington D.C. At approximately 2:10 am, Officer Carter saw Mr. Ray and several other males start to fight outside the SAX nightclub. MPD officers ran to break up the fight.

To break up the fight, Officer Othneil Blagrove placed Mr. Ray in handcuffs. Officer Blagrove then searched and recovered a firearm from Mr. Ray's underwear along with 147 pills, in a clear plastic baggie, from Mr. Ray's pocket. The recovered firearm was a Glock 29 Gen 4, a 10 mm caliber pistol with the serial number BVET061. The firearm had a fifteen-round magazine with one round in the chamber. A check on the DC Gun Registry Database revealed that Mr. Ray was not licensed to possess a firearm in the District of Columbia.



*Figure 1: Firearm recovered from Mr. RAY*

## II. <u>Legal Authority and Argument</u>

As a preliminary matter, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted and the government may proceed by proffer. *United States v. Smith*, 79 F.3d 1208, 1210 (D.C.

Cir. 1996). Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986). *See also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues, since the detention hearing is not to be turned into a mini- trial and is not to be used as a subterfuge to obtain discovery. *See Smith*, 79 F.3d at 1210, *see Williams*, 798 F. Supp. at 36.

Under the Bail Reform Act, if the Court determines that "no condition or combination of conditions will reasonably assure the appearance of [a defendant] as required and the safety of any other person and the community," the Court shall order a defendant held pending trial. 18 U.S.C. § 3142 (e). The Act provides however, for certain crimes, that there is a rebuttable presumption that no conditions or combination of conditions will assure the safety of the community. *See id.* "For the purposes of making that determination, a grand jury indictment, by itself, establishes probable cause to believe that a defendant committed the crime with which he is charged." *United States v. Taylor*, 289 F. Supp. 3d 55, 62–63 (D.D.C. 2018) (internal quotations omitted).

The United States seeks detention pursuant to §3142(f)(1)(E) (felony involving possession of a firearm), because the defendant is charged with committing a firearm offense. A review and understanding of the facts and circumstances in the instant matter demonstrate that there are no conditions or combination of conditions that would assure the safety of the community. *See* 18 U.S.C. § 3142(e)(1). All four § 3142(g) factors favor detention pending trial, including: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the Defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to

any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g)

### A. <u>Nature and Circumstance of the Offense Weighs in Favor of Detention</u>

The Nature of the Mr. Ray's conduct is serious and weighs heavily in favor of pretrial detention in this case. The Defendant is indicted with serious offenses carrying significant penalties. For violating 18 U.S.C. § 922(g), the Defendant faces a maximum sentence of up to 15 years imprisonment pursuant to 18 U.S.C. § 924(a)(8). For violating 22 D.C. Code §§ 4503(a)(1); (b)(1) (Unlawful Possession of a Firearm (Prior Conviction)) and 22 D.C. Code §§ 4514(a); (c)(3) (Possession of a Prohibited Weapon), the Defendant faces a maximum sentence of up to 10 years imprisonment for both charges and a mandatory sentence of 1 year for the Unlawful Possession of a Firearm charge pursuant to 22 D.C. Code §§ 4503(a)(1); (b)(1). Here, the evidence is convincing that the Mr. Ray was carrying a loaded firearm, concealed in his pants. The weapon was readily accessible to the Defendant, and it had a chambered round

As a threshold matter, the Court has repeatedly held that possession of a firearm, when loaded or carried in a concealed manner as in this case, poses a risk of danger to the community. *See, e.g., United States v. Cole*, 459 F. Supp. 3d 116, 120 (D.D.C. 2020) (noting that a loaded firearm "has the great potential to escalate into violence," particularly when defendant's prior convictions indicate a predilection for violence); *United States v. Riggins*, 456 F. Supp. 3d 138, 144 (D.D.C. 2020); *United States v. Gassaway*, No. 21-cr-550 (RCL), 2021 U.S. Dist. LEXIS 175978 at *9-10 (D.D.C. Sept. 16, 2021) (collecting cases in this district holding that unlawful firearm possession is dangerous to the public). The firearm recovered from Mr. Ray was loaded and ready to fire when it was recovered. Simply stated, unlawful gun possession is so problematic, especially by someone with the Mr. Ray's criminal history, because of the number of violent gun crimes committed in the District.

This case originated from a fight that erupted outside of the Sax Night Club. The combination of a public fight and a loaded firearm creates a dangerous scenario where someone could get seriously injured or even die. The Journal of American Medical Association-Pediatrics recently publish a study and found that "the US is the only nation among its peers in which firearms are the leading cause of death among children and teenagers, outpacing motor vehicle collisions and cancer in recent years" Jeremy Samuel Faust, MD, MS et all. *Firearm Laws and Pediatric Mortality in the US*, JAMA Pediatrics, published online June 9, 2025 (https://jamanetwork.com/journals/jamapediatrics/fullarticle/2834530).

Mr. Ray's lack of concern for public's safety should be concerning for the Court and weighs in favor of detention.

### B. <u>The Weight of the Evidence Against the Defendant Weighs in Favor of Detention</u>

The weight of the evidence against Mr. Ray also weighs heavily in favor of pretrial detention. Here, the government's case against the Defendant is strong. As mentioned above, the loaded firearm was found on Mr. Ray. This means that Mr. Ray was in actual possession of the firearm. Mr. Ray cannot blame someone else for why he had a loaded firearm in his underwear.

The weight of the evidence should be considered equally with the other § 3142 factors. In *United States v. Blackson*, following a thorough review of the text of § 3142 and decisions analyzing this factor, Judge Howell found that "the weight of the evidence should not automatically be weighed less than the remaining statutory pretrial detention factors." 2023 U.S. Dist. LEXIS 18988, at *29-30. Instead, "the weight of the evidence against [a] defendant [should] be weighed as all factors are—in accordance with the specific facts of this case—to determine whether pretrial detention is appropriate." *Id.* In an unpublished opinion, the D.C. Circuit affirmed

Judge Howell's decision. *United States v. Blackson*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023). Moreover, the Second Circuit reached the same decision after a thorough and careful analysis of the issue. *United States v. Zhe Zhang*, 55 F.4th 141, 149-150 (2d Cir. 2022). This Court should follow *Blackson* and *Zhang;* this factor should be given no less weight than any other factor.

"If the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that defendant will flee to avoid future court proceedings and may indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true." *Blackson*, 2023 U.S. Dist. LEXIS 18988, at *29-30. And so it is in this case, the weight and strength of the evidence increases the prospect that Mr. Ray will present a danger to the community if released

### C. <u>The History and Characteristics of the Defendant Weighs in Favor of Detention</u>

Mr. Ray's criminal history heavily favors detention. Since 2007, Mr. Ray has a number of adult criminal convictions that span over three states, Virginia, Maryland, and D.C. In addition, Mr. Ray was on two different supervised releases when he was arrested I this case.

The most recent criminal conviction is a 2021 conviction out of Maryland, case number 19-CR-00215. In Case 19-CR-00215, exhibit 1, Mr. Ray signed a plea agreement to a superseding indictment of one count Felon in Possession of a Firearm and admitted to a violation of supervised release (violation #2- possessed a firearm or ammunition as defined in 18 U.S.C. § 921). This violation of supervised release is based off the 2013 conviction for Distribution of Phencyclidine case out of Maryland case number CR 13-00004, exhibit 2. Meaning, that Mr. Ray was on supervised release for the a drug charge in 2013 and then picked up a new law charge of Felon in Possession of a Firearm and pled to it in 2021, in case 19-CR-00215. Then while on supervised release, for case 19-

CR-00215, he was arrested in this case for a Felon in Possession of a Firearm.

Mr. Ray also has a 2019 conviction out of Virginia for Manufacturing Controlled Substance, docket number CR 18000757-00, a 2009 conviction for Flee Law Enforcement Officer, out of D.C. case number 2009-CF3-023877, and a 2008 conviction for Carry Handgun out of Prince George's County Maryland, case number CT080574..

Mr. Ray is currently on supervised release for two separate cases in two different states. The purpose of supervised release is for a defendant to be released into society with the obligation and agreement to follow the law and the court's order. Mr. Ray's conduct shows that he cannot be trusted to follow the law while on supervised release. In this case, Mr. Ray was arrested for possession of a firearm and a baggie of 147 pills. Mr. Ray's actions also show that he will continue to commit the same crimes that he is on supervised release. With the opening of this case also means that Mr. Ray currently has three open cases throughout the entire DMV area.

Despite a recent term of incarceration and supervision, Mr. Ray continues his pattern of criminal behavior. He illegally picked up a firearm in the instant case knowing full well that he should not, given that he had already previously served a sentence and was under supervised probation for engaging in the same conduct.

### D. The Nature and Seriousness of the Danger to Person or Community Weighs in Favor of Detention

The fourth factor, the nature and seriousness of the danger to any person or the community posed by the defendant's release, similarly weighs heavily in favor of detention. The D.C. Circuit has noted that "'[w]hen the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community,'" pretrial detention is available to "'disable the arrestee from executing that

threat.'" *United States v. Munchel*, 991 F.3d 1273, 1280 (D.C. Cir. 2021) (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)). This requires the court to make a "forward looking determination" about the defendant's risk of danger to the community, keeping in mind that detention may be justified even if the court does not explicitly find that the defendant is a risk of committing acts of violence. *United States v. Hale- Cusanelli*, 3 F.4th 449, 456 (D.C. Cir. 2021) (citing *Munchel*, 991 F.3d at 1283).

Here, Mr. Ray, poses an obvious and articulable threat to the community as evidenced by his recidivism and his failure to obey court orders. As noted above, the defendant was on two separate supervised releases when he committed the instant offense. Mr. Ray, however, defied those orders and possessed a firearm. This defiance demonstrates just how dangerous he is to the community. Mr. Ray has also shown, by how he was arrested, that he is willing to partake in brawls that spill out it the public streets.

## III. Conclusion

There is no condition or combination of conditions that would ensure Mr. Ray's compliance with court-ordered release conditions. As Mr. Ray's criminal history makes clear, he poses a serious risk to the community. For all the foregoing reasons, the Government respectfully requests that the Court detain the Defendant pending trial.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By: */s/ Joseph Dernbach*
Joseph Dernbach
Special Assistant United States Attorney
D.C. Bar No. 1740516
United States Attorney's Office
601 D Street, N.W.
Washington, D.C. 20530
Telephone: 202-8344815
Email: Joseph.Dernbach@usdoj.gov

**Exhibit 1**

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Southern Division*

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND
2021 JUN 17 PM 1:38
CLERK'S OFFICE
AT GREENBELT

*Rajeev R. Raghavan*
*Assistant United States Attorney*
*Rajeev.Raghavan@usdoj.gov*

*Mailing Address:*
*6500 Cherrywood Lane, Suite 200*
*Greenbelt, MD 20770-1249*

*Office Location:*
*6406 Ivy Lane, 8th Floor*
*Greenbelt, MD 20770-1249*

*DIRECT: 301-344-4031*
*MAIN: 301-344-4433*
*FAX: 301-344-4516*

June 15, 2021

Charles Burnham, Esq.
Burnham & Gorokhov, PLLC
1424 K St. NW
Washington, D.C. 20005

Re: United States v. Jonathan Pierre Ray,
Criminal No. TDC-19-215 (Superseding Indictment)
Criminal No. TDC-13-004 (Violation of Supervised Release)

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Jonathan Pierre Ray (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by **June 17, 2021, at 12:00 p.m.**, it will be deemed withdrawn. **This plea agreement as to Criminal No. TDC-19-215 is entered into and will be submitted to the Court pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C).** The terms of the Agreement are as follows:

## Offense of Conviction and Violation of Supervised Release

1. The Defendant agrees to plead guilty to Count One of the Superseding Indictment, which charges the Defendant with Felon in Possession of Firearms, in violation of 18 U.S.C. § 922(g)(1). The Defendant also agrees to admit to a violation of supervised release alleged in the petition dated March 26, 2019, now pending against him in Criminal No. TDC-13-004 (the "VOSR"), which alleges that in violation of his conditions of supervised release: the Defendant possessed a firearm or ammunition as defined in 18 U.S.C. § 921 (Violation #2). The Defendant admits that the Defendant is, in fact, guilty of the offense in the Superseding Indictment, and of violating the terms of his supervised release as alleged in the Petition, and will so advise the Court.

## Elements of the Offense and Violation of Supervised Release

2. The elements of the offense and violation of supervised release to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

a. Count One (Possession of Firearms by a Convicted Felon) (Criminal No. TDC-19-215): That on or about the time alleged in the Superseding Indictment, in the District of Maryland, (1) the Defendant knowingly possessed a firearm; (2) at the time of the charged act, the Defendant had previously been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, and his civil rights had not been restored; (3) at the time of the charged act, the Defendant knew that the Defendant had been convicted of such an offense; and (4) the possession charged was in or affecting interstate or foreign commerce.

b. VOSR (Criminal No. TDC-13-004): That on or about the time alleged in the Petition, in the District of Maryland: (1) the Defendant was on supervised release; and (2) the Defendant violated a condition of supervised release.

Penalties

3. The maximum penalties provided by statute for the offense to which the Defendant is pleading guilty are as follows:

*Count One (Criminal No. TDC-19-215)*

| Count | Statute | Minimum Prison | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|---|---|---|---|---|---|---|
| 1 | 18 U.S.C. § 922(g)(1) | N/A | 10 years | 3 years | $250,000 | $100 |

*VOSR (Criminal No. TDC-13-004)*

Violation of Supervised Release: The conviction underlying the Defendant's supervised release was pursuant to 21 U.S.C. § 841(a)(1) and, therefore, is a Class B felony. Pursuant to 18 U.S.C. § 3583(g)(2), because the Defendant possessed a firearm, revocation of supervised release is mandatory. Pursuant to 18 U.S.C. § 3583(e)(3) and (h), the maximum sentence is three years of imprisonment and four years of supervised release, less any term of imprisonment imposed upon revocation of supervised release.

a. Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

b. Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

c. Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

d. Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

e. Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

f. Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

## Waiver of Rights

4. The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

*Criminal No. TDC-19-215*

a. If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c. If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses

in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

d. The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

e. If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

g. If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

*Criminal No. TDC-13-004*

i. If the Defendant had persisted in his plea of not guilty, the Defendant would have had the right: (1) to be assisted by competent counsel; (2) to receive written notice of the alleged violation; (3) to disclosure of the evidence against him; and (4) to a revocation hearing within a reasonable time.

j. If the matter proceeded to a revocation hearing, the Defendant would have had an opportunity to appear, present evidence, and question any adverse witnesses (unless the Court determines that the interest of justice does not require the witness to appear).

k. At any such revocation hearing, the Government would have to prove to the presiding Judge, by a preponderance of the evidence, that the Defendant violated a condition of supervised release.

l. If the Defendant were found guilty at such a hearing, he would have the right to appeal the Court's finding of guilt and its decisions concerning the admissibility of evidence. By pleading guilty, the Defendant knowingly gives up the right to appeal the finding of guilt and the Court's decisions.

Advisory Sentencing Guidelines Apply

5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

Factual and Advisory Guidelines Stipulation

6. This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein.

*Criminal No. TDC-19-215*

Count One (Possession of Firearms by a Convicted Felon):

a. This Office and the Defendant further agree that the applicable base offense level is **24**, pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 2K2.1(a)(2), because the Defendant committed the instant offense subsequent to sustaining at least two felony convictions of a controlled substance offense.

b. This Office does not oppose a **2**-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a) based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal

conduct. This Office **will not agree** to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional **1**-level decrease in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a), and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

c. There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

*VOSR (Criminal No. TDC-13-004)*

d. This Office and the Defendant further agree that, pursuant to U.S.S.G. § 7B1.1(a)(2), the advisory guidelines range for Grade B violations applies, because the most serious conduct alleged in the VOSR petition and to which the Defendant is admitting constitutes a federal, state, or local offense punishable by a term of imprisonment exceeding one year.

e. The parties further agree that, at the time of his original conviction that provided his term of supervised release in the case underlying Criminal No. TDC-13-004, the Defendant had a criminal history category of **IV**.

f. Thus, the parties further agree that, pursuant to U.S.S.G. § 7B1.4(a), the advisory guidelines range for the VOSR is **12-18 months**. Pursuant to U.S.S.G. § 7B1.3(f), any term of imprisonment imposed upon the revocation of supervised release shall be ordered to be served consecutively to any sentence of imprisonment that the Defendant is serving, whether or not the sentence of imprisonment being served resulted from the conduct that is the basis of the revocation of supervised release.

7. Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

<u>Rule 11 (c) (1) (C) Plea as to Criminal No. TDC-19-215</u>

The parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a sentence of **time served** in the custody of the Bureau of Prisons is the appropriate disposition of this case taking into consideration the nature and circumstances of the offense, the Defendant's criminal history, and all of the other factors set forth in 18 U.S.C. § 3553(a). The parties further

agree that a sentence of **time served** is the appropriate and reasonable sentence under the factors enumerated in 18 U.S.C. § 3553(a), regardless of the applicable United States Sentencing Guidelines calculations.

8. This Agreement does not affect the Court's discretion to impose any lawful term of supervised release or fine or to set any lawful conditions of probation or supervised release. In the event that the Court rejects this Agreement, except under the circumstances noted below, either party may elect to declare the Agreement null and void. Should the Defendant so elect, the Defendant will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5). The parties agree that if the Court finds that the Defendant engaged in obstructive or unlawful behavior and/or failed to acknowledge personal responsibility as set forth herein, neither the Court nor the Government will be bound by the specific sentence contained in this Agreement, and the Defendant will not be able to withdraw his plea.

## Obligations of the Parties

9. At the time of sentencing, in Criminal No. TDC-19-215, this Office and the Defendant agree to request a sentence of **time served** in the custody of the Bureau of Prisons.

10. In Criminal No. TDC-13-004, the parties reserve the right to advocate for a reasonable sentence, considering any appropriate factors under 18 U.S.C. § 3583(e). The Defendant reserves the right to request that the term of imprisonment in Criminal No. TDC-13-004 run concurrent with the term of imprisonment in Criminal No. TDC-19-215; the Government reserves the right to request that the terms of imprisonment run consecutively.

11. This Office and the Defendant reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing, including the conduct that is the subject of any counts of the original or Superseding Indictment. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

## Waiver of Appeal

12. In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute, to the extent that such challenges legally can be waived.

b. If the Court imposes the agreed-upon sentence in Criminal No. TDC-19-215, the Defendant and this Office knowingly and expressly waive all rights conferred by 18

U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

c. In Criminal No. TDC-13-004, the Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows: the Defendant reserves the right to appeal any term of imprisonment to the extent that it exceeds 18 months' imprisonment, to run consecutively to any term of imprisonment imposed in Criminal No. TDC-19-215.

d. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Forfeiture

13. The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

14. Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in any money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities.

15. The Defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. This Office agrees to seek the Attorney General's approval to apply forfeited assets to the Defendant's Restitution Order.

16. The Defendant agrees to assist fully in the forfeiture of the property described above. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the

jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

17. The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, including, but not limited to, the following firearms and ammunition administratively forfeited by the Bureau of Alcohol, Tobacco, Firearms and Explosives on or about October 18, 2019: (1) a Glock Model 30S .45 caliber pistol, bearing serial number BEVG029 and 14 rounds of ammunition contained therein; (2) a Taurus Model G2C 9 millimeter pistol, bearing serial number TLN46098 and 13 rounds of ammunition contained therein; and (3) a Century Arms International AK 7.62 caliber pistol, bearing serial number PMD-04055-17 and 24 rounds of 7.62 x 39mm ammunition contained therein, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

Defendant's Conduct Prior to Sentencing and Breach

18. Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

19. If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

Entire Agreement

20. This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior

Case 8:19-cr-00215-DKC Document 129 Filed 06/17/21 Page 10 of 12

understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Jonathan F. Lenzner
Acting United States Attorney

Rajeev R. Raghavan
Dana B. Brusca
Assistant United States Attorney

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

6-17-21
Date

Jonathan Pierre Ray

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

6/17/21
Date

Charles Burnham, Esq.

## ATTACHMENT A

### STIPULATION OF FACTS

On or about March 12, 2019, the Defendant, **JONATHAN PIERRE RAY** ("**RAY**"), drove a 2012 Honda Accord and parked the vehicle in the parking lot of a church in Hyattsville, Maryland.

Prior to exiting the vehicle, **RAY** removed a black and silver handgun from his front waistband and placed this handgun in the vehicle's glove compartment. Law enforcement was able to observe **RAY** remove the handgun from his person and place it in the glove compartment of the vehicle. **RAY** and his passenger then exited the vehicle and walked into the church.

Upon exiting the church, **RAY** and his passenger walked back to the 2012 Honda Accord. **RAY** unlocked the vehicle and began to enter the vehicle. After **RAY** was sitting in the driver's seat, law enforcement approached in marked cars. Upon approaching the immediate area of the vehicle, law enforcement detected the odor of marijuana. Law enforcement proceeded to detain both **RAY** and the passenger.

A search of the vehicle revealed in plain view on the front passenger floorboard of the vehicle a Glock Model 30S .45 caliber pistol, bearing serial number BEVG029, loaded with 13 rounds in the magazine with one loaded in the chamber. Law enforcement also recovered from the vehicle a Taurus Model G2C 9 millimeter pistol, bearing serial number TLN46098, which **RAY** had tucked away in the glove box. The Taurus Model G2C 9 millimeter pistol was loaded with 12 rounds in the magazine and one round in the chamber.

The Glock Model 30S .45 caliber pistol and Taurus Model G2C 9 millimeter pistol were both manufactured outside of Maryland and travelled in interstate commerce prior to their recovery in Maryland on March 12, 2019.

Prior to March 12, 2019, **RAY** had, and knew that he had, previously been convicted in a court of a crime punishable by imprisonment for a term exceeding one year and his civil rights had not been restored. When he committed the instant offense, **RAY** was on supervised release from an April 5, 2013, conviction in the U.S. District Court for the District of Maryland.

SO STIPULATED:

Rajeev R. Raghavan
Dana B. Brusca
Assistant United States Attorney

Jonathan Pierre Ray
Defendant

Charles Burnham, Esq.
Counsel for Defendant

**Exhibit 2**

**U.S. Department of Justice**

FILED ✓ ENTERED
LOGGED RECEIVED

APR 05 2013

AT GREENBELT
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY DEPUTY

*United States Attorney*
*District of Maryland*
*Southern Division*

*Rod J. Rosenstein*
*United States Attorney*

*Steven E. Swaney*
*Assistant United States Attorney*

*400 United States Courthouse*
*6500 Cherrywood Lane*
*Greenbelt, MD 20770-1249*

*DIRECT: 301-344-4238*
*MAIN: 301-344-4433*
*FAX: 301-344-4516*
*TTY/TDD: 301-344-2426*
*steven.swaney@usdoj.gov*

March 5, 2013

John C. Chamble, Esq.
Assistant Federal Public Defender
Office of the Federal Public Defender for the District of Maryland
6411 Ivy Lane, Suite 710
Greenbelt, MD 20770

Re: United States v. Jonathan Pierre Ray,
Criminal No. AW-13-004

Dear Mr. Chamble:

This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by March 11, 2013, it will be deemed withdrawn. The terms of the agreement are as follows:

Offenses of Conviction

1. The Defendant agrees to plead guilty to the Indictment filed against him, which charges him in Counts One and Two with distribution of more than 100 grams of a mixture and substance containing a detectable amount of PCP, in violation of 21 U.S.C. § 841. The Defendant admits that he is, in fact, guilty of these offenses and will so advise the Court.

Elements of the Offense

2. The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows: (1) the defendant knowingly and intentionally distributed a mixture and substance containing PCP; (2) the defendant

knew that what he distributed was a controlled substance; and (3) the weight of the mixture and substance containing PCP was more than 100 grams.

## Penalties

3. The maximum sentence provided by statute for the offenses to which the Defendant is pleading guilty is as follows: not less than five years and not more than 40 years imprisonment, at least four years of supervised release, and a fine of $5,000,000. In addition, the Defendant must pay $200 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

## Waiver of Rights

4. The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

a. If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present

---

[1] Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

d. The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

e. If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

g. If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if he is not a citizen of the United States, pleading guilty may have consequences with respect to his immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his/her attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

Factual and Advisory Guidelines Stipulation

6. This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

a. As to Counts One and Two, under United States Sentencing Guideline ("U.S.S.G.") §§ 2D1.1(a)(5) and 2D1.1(c)(7), the base offense level is **26**, because more than 100 but less than 400 grams of PCP were involved in the offense.

b. This Office does not oppose a two-level reduction in the Defendant's combined offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty. (The Defendant acknowledges, however, that this reduction may not be applied in a manner which results in a sentence below the any mandatory minimum sentence.) This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty. If the Defendant obtains a three-point reduction, the final offense level would be **23**.

7. The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

8. This Office and the Defendant agree that with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the U.S.S.G. will be raised or are in dispute. If the Defendant wishes to argue for any factor that could take the sentence outside of the advisory guidelines range, he will notify the Court, the United States Probation Officer and government counsel at least 14 days in advance of sentencing of the facts or issues he intends to raise.

Obligations of the United States Attorney's Office

9. At the time of sentencing, this Office will recommend a sentence within the advisory guidelines range, subject to any mandatory minimum sentence.

10. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the

Defendant's background, character and conduct.

Forfeiture

11. The defendant understands that the court will, upon acceptance of his guilty plea, enter an order of forfeiture as part of his sentence, and that the court will order the forfeiture of all proceeds obtained or retained as a result of the offense, any property used to commit or to facilitate the commission of the offense, and all property involved in the offense, including but not limited to the following: $8,828 in U.S. currency. The Defendant agrees to consent to the entry of orders of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding the forfeiture at the change-of-plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

JC
SB

12. The Defendant further agrees to waive all constitutional, legal and equitable challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The Defendant also agrees not to challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this agreement, and will not assist any third party with regard to such challenge or review or with regard to the filing of a petition for remission of forfeiture.

Public Benefits in Drug Cases

13. The Defendant understands and acknowledges that under 21 U.S.C. §§ 862 and 862a, a person who has been convicted of a federal offense involving the distribution or possession of controlled substances may be denied certain federal and state benefits such as loans, grants, or food stamps

Waiver of Appeal

14. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

b. The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows: (i) the Defendant reserves the right

to appeal any term of imprisonment to the extent that it exceeds the advisory guidelines range resulting from an adjusted base offense level of **23**; (ii) this Office reserves the right to appeal any term of imprisonment to the extent that it is below the advisory guidelines range resulting from an adjusted base offense level of **23**.

c. Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

d. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Obstruction or Other Violations of Law

15. The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

## Court Not a Party

16. The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including

the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement. The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

Entire Agreement

17. This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By:____________________________
Steven E. Swaney
Assistant United States Attorney

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

SIGN HERE

4-3-13
Date

Jonathan Pierre Ray

I am Jonathan Pierre Ray's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

4.3.13
Date

John C. Chamble, Esq.

Case 8:13-cr-00004-TDC Document 17-1 Filed 04/05/13 Page 1 of 1

FILED ✓ ENTERED
LOGGED RECEIVED

APR 05 2013

AT GREENBELT
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY DEPUTY

**ATTACHMENT A**
**Statement of Facts: JONATHAN PIERRE RAY**

*The undersigned parties hereby stipulate and agree that if this matter had gone to trial, the government would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence which would have been presented had this matter gone to trial.*

On or about August 16, 2012, a confidential source (CS) working at the direction of law enforcement made a series of recorded telephone calls with the defendant, **JONATHAN PIERRE RAY ("RAY")** to arrange for the purchase of PCP. During the calls **RAY** agreed to meet the CS in Temple Hills, Maryland, to supply the CS with PCP. Later that day the CS went to a gas station in Temple Hills, Maryland, where the CS met with **RAY** inside the CS's vehicle. Inside the vehicle, **RAY** provided the CW with a plastic apple juice bottle containing approximately 165 grams of PCP in exchange for $2,000. A sample of the purchased liquid was analyzed by the DEA Mid Atlantic Laboratory, confirming that the liquid purchased contained PCP.

On or about September 13, 2012, the CS again made a series of recorded calls with **RAY** to arrange for a second purchase of PCP. During the calls **RAY** agreed to meet the CS to supply the CS with PCP. The CS traveled to a parking lot in Suitland, Maryland, where the CS met with **RAY** inside the CS's vehicle. Inside the vehicle **RAY** provided the CS with a plastic apple juice bottle containing approximately 144 grams of PCP in exchange for $2,000. A sample of the purchased liquid was analyzed by the DEA Mid Atlantic Laboratory, confirming that the liquid purchased contained PCP.

Based on the foregoing facts, a magistrate judge of this Court issued an arrest warrant charging **RAY** with distribution of PCP. On January 4, 2013, law enforcement agents arrested **RAY** in Arlington, Virginia. At the time of his arrest, **RAY** was in possession of $8,828 in U.S. currency, a portion of which was derived from drug distribution activities.

I have read this statement of facts and carefully reviewed it with my attorney. I acknowledge that it is true and correct.

SIGN HERE

4-3-13
Date

Jonathan Pierre Ray

4.3.13
Date

J Chamble
John C. Chamble, Esq.